**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**R.B.,** *et al.*,

Plaintiffs,

v.

**MIDDLETOWN TOWNSHIP BOARD OF EDUCATION,**

Defendant.

Civil Action No. 23-0930 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon Cross-Motions for Summary Judgment. Defendant Middletown Township Board of Education ("Defendant") filed its Motion for Summary Judgment on January 30, 2026. ("Def.'s Mot. for Summary J.", ECF No. 36.) Defendant's Motion was accompanied by both a Statement of Material Facts ("Def.'s SOMF", ECF No. 36-3) and a moving brief ("Def.'s Moving Br.", ECF No. 36-4). Plaintiffs R.B. (father), C.B., V.B., R.B. (child), and S.B. (collectively, "Plaintiffs") filed a response to Defendant's Statement of Material Facts ("Pls.' RSOMF", ECF No. 37-2) and an opposition brief ("Pls.' Opp'n Br.", ECF No. 37-1). Defendant filed a reply brief. ("Def.'s Reply Br.", ECF No. 38.)

Plaintiffs filed their Cross-Motion for Summary Judgment on January 30, 2026. ("Pls.' Cross-Mot. for Summary J.", ECF No. 39.) Plaintiffs' Cross-Motion was accompanied by both a Statement of Material Facts ("Pls' Cross-SOMF", ECF No. 39-3) and a moving brief ("Pls.' Cross-Moving Br.", ECF No. 39-2.) Defendant filed a response to Plaintiffs' Statement of

Material Facts ("Def.'s Cross-RSOMF", ECF No. 40 at *18–32[1]) and an opposition brief ("Def.'s Opp'n Br.", ECF No. 40 at *1–17). Plaintiffs filed a reply brief. ("Pls.' Reply Br.", ECF No. 41.)

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendant's Motion for Summary Judgment and **DENY** Plaintiffs' Cross-Motion for Summary Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

C.B. and R.B. (father) live in Middletown, New Jersey and have three young children, S.B., R.B. (child), and V.B. (collectively, the "children"), who are six, eight, and nine years old, respectively. (Def.'s SOMF ¶¶ 2–3; Pls.' RSOMF ¶¶ 2–3; Pls.' Cross-SOMF ¶¶ 1–2; Def.'s Cross-RSOMF ¶¶ 1–2.) C.B. is diagnosed with Usher syndrome, a rare genetic condition that causes hearing and vision loss. (Def.'s SOMF ¶¶ 8–10; Pls.' RSOMF ¶¶ 8–10; Pls.' Cross-SOMF ¶¶ 7–9; Def.'s Cross-RSOMF ¶¶ 7–9.)

When V.B. was three years old, in 2019, she began preschool at New Monmouth Elementary School, which was one and a half miles away from Plaintiffs' residence. (Def.'s SOMF ¶ 17; Pls.' RSOMF ¶ 17; Pls.' Cross-SOMF ¶ 48; Def.'s Cross-RSOMF ¶ 48.) Upon V.B.'s enrollment to New Monmouth Elementary School, Defendant made C.B. aware of its transportation policy. (Def.'s SOMF ¶ 60; Pls.' RSOMF ¶ 60.) Defendant's transportation policy states, among other things, that it would provide transportation services to students who reside remotely as defined in N.J. Stat. Ann. § 18A:39-1. (*See* "Ex. N to Def.'s Mot. for Summary J.", ECF No. 36-6 at *160–162.) C.B. was aware that this policy did not entitle her children to transportation. (Def.'s SOMF ¶ 60; Pls.' RSOMF ¶ 60.)

---

[1] As Defendant submitted its opposition brief and statement of facts as two separate documents in a single ECF filing, the page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

At the start of the 2019 to 2020 school year, C.B. drove V.B. to New Monmouth Elementary School every day. (Pls.' Cross-SOMF ¶ 51; Def.'s Cross-RSOMF ¶ 51.) However, in February 2020, C.B. was determined to be legally blind. (Def.'s SOMF ¶ 8–10; Pls.' RSOMF ¶¶ 8–10; Pls.' Cross-SOMF ¶¶ 7–9; Def.'s Cross-RSOMF ¶¶ 7–9.) Shortly after C.B.'s diagnosis, C.B.'s parents and in-laws helped transport V.B. to school. (Def.'s SOMF ¶ 56; Pls.' RSOMF ¶ 56.) One month after C.B.'s diagnosis, R.B. (father) and C.B. met with school officials to facilitate V.B.'s transportation to and from school for the remainder of the 2019 to 2020 school year. (Def.'s SOMF ¶ 57; Pls.' RSOMF ¶ 57.) Defendant was able to place V.B. on a bus given the availability of an existing route. (Def.'s SOMF ¶ 58; Pls.' RSOMF ¶ 58.) School officials told C.B. that her request for transportation would be treated the same as the requests from other families dealing with hardship because Defendant's resources were limited and, as such, exceptions to the transportation policy could only be granted sparingly. (Pls.' Cross-SOMF ¶¶ 64–66; Def.'s Cross-RSOMF ¶¶ 64–66; Pls.' Cross-SOMF ¶ 68; Def.'s Cross-RSOMF ¶ 68.)

For the 2020 to 2021 school year, V.B. attended Fairview Elementary School, which was four and a half miles away from Plaintiffs' residence. (Def.'s SOMF ¶ 67; Pls.' RSOMF ¶ 67; Pls.' Cross-SOMF ¶ 71; Def.'s Cross-RSOMF ¶ 71.) Although V.B. attended school virtually from September 2020 to February 2021 due to the COVID-19 pandemic, Defendant provided V.B. transportation to Fairview Elementary School due to the availability of an existing bus route. (Def.'s SOMF ¶¶ 69–70; Pls.' RSOMF ¶¶ 69–70; Pls.' Cross-SOMF ¶¶ 73–74; Def.'s Cross-RSOMF ¶¶ 73–74.)

For the 2021 to 2022 school year, R.B. (child) began preschool at Harmony Elementary School, which is a mile and a half away from Plaintiffs' residence, and V.B. returned to New Monmouth Elementary School for kindergarten. (Def.'s SOMF ¶¶ 73, 78; Pls.' RSOMF ¶¶ 73,

78; Pls.' Cross-SOMF ¶¶ 75, 79; Def.'s Cross-RSOMF ¶¶ 75, 79.) C.B. requested courtesy transportation for R.B. (child) and V.B. from Defendant, but Defendant denied the request because: (1) there was no existing bus route available; (2) V.B. lived less than two miles away from New Monmouth Elementary School; and (3) Defendant's preschool did not offer transportation. (Def.'s SOMF ¶¶ 75–77, 81; Pls.' RSOMF ¶¶ 75–77, 81; Pls.' Cross-SOMF ¶¶ 81, 88, 96; Def.'s Cross-RSOMF ¶¶ 81, 88, 96.) C.B. submitted a written appeal, which was subsequently denied. (Def.'s SOMF ¶¶ 84–85; Pls.' RSOMF ¶¶ 84–85; Pls.' Cross-SOMF ¶¶ 100–101; Def.'s Cross-RSOMF ¶¶ 100–101.) During the 2021 to 2022 school year, a neighbor helped transport V.B. to school, and R.B. (father) transported R.B. (child) to and from preschool. (Def.'s SOMF ¶ 87; Pls.' RSOMF ¶ 87; Pls.' Cross-SOMF ¶¶ 103–104; Def.'s Cross-RSOMF ¶¶ 103–104.)

During the 2022 to 2023 school year, R.B. (child) began his second year of preschool at Harmony Elementary School and V.B. began first grade at New Monmouth Elementary School. (Def.'s SOMF ¶ 94; Pls.' RSOMF ¶ 94.) C.B. again requested transportation but Defendant found that the children were ineligible for transportation based upon Defendant's policy. (Def.'s SOMF ¶¶ 95–96; Pls.' RSOMF ¶¶ 95–96.) C.B. requested a meeting with the School Board members, which occurred on September 20, 2022, and Plaintiffs explained their situation to seek a reasonable accommodation for C.B.'s disability. (Def.'s SOMF ¶ 97; Pls.' RSOMF ¶ 97; Pls.' Cross-SOMF ¶¶ 130–133; Def.'s Cross-RSOMF ¶¶ 130–133.) Two days later, the School Board sent written correspondence to C.B. stating that, "While the Board understands and sympathizes with your disability, the consensus of the Board was that your children are ineligible for transportation based upon Board policy. These are not simple decisions for the Board . . . to make, but it is vital that policies are administered consistently[.]" (Def.'s SOMF ¶ 99; Pls.' RSOMF ¶ 99; Pls.'

Cross-SOMF ¶ 135; Def.'s Cross-RSOMF ¶ 135.) During the 2022 to 2023 school year, neighbors drove V.B. and R.B. (child) to and from school. (Def.'s SOMF ¶¶ 100–102; Pls.' RSOMF ¶¶ 100–102.)

In 2023, S.B. began preschool at Harmony Elementary School, and V.B. and R.B. (child) both attended New Monmouth Elementary School. (Def.'s SOMF ¶ 107; Pls.' RSOMF ¶ 107.) During the 2023 to 2024 and 2024 to 2025 school years, Defendant did not provide the children transportation. (Def.'s SOMF ¶ 118; Pls.' RSOMF ¶ 118; Pls.' Cross-SOMF ¶¶ 140, 144; Def.'s Cross-RSOMF ¶¶ 140, 144.) At the start of the 2025 to 2026 school year, Defendant offered transportation to the children because there was a route available with a bus stop near Plaintiffs' residence. (Def.'s SOMF ¶¶ 120–123; Pls.' RSOMF ¶¶ 120–123; Pls.' Cross-SOMF ¶¶ 146–147; Def.'s Cross-RSOMF ¶¶ 146–147.) Notwithstanding the availability of transportation for that school year, Defendant informed Plaintiffs that: (1) transportation would not be guaranteed in the future; (2) the request for transportation would need to be reevaluated each year; and (3) C.B. is not entitled to the children's transportation to accommodate her own disability. (Pls.' Cross-SOMF ¶¶ 150–152; Def.'s Cross-RSOMF ¶¶ 150–152.)

On February 17, 2023, Plaintiffs initiated the present action. (*See* "Compl.", ECF No. 1.) Plaintiffs thereafter amended the Complaint on August 29, 2025. (*See* "FAC", ECF No. 31.) Plaintiffs seek redress for Defendant's failure to provide C.B. a reasonable accommodation and for disparate treatment of C.B. on account of her disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD"). (*See generally id.*) R.B. (father), V.B., R.B. (child), and

S.B. assert associational claims for failure to accommodate and disparate treatment under the RA, ADA, and NJLAD. (*Id.*)

After the exchange of discovery, both parties moved for summary judgment on January 30, 2026. Defendant first filed its Motion for Summary Judgment and its Moving Brief. (Def.'s Mot. for Summary J.; Def's Moving Br.) Plaintiffs then filed their Cross-Motion for Summary Judgment, accompanied by their Cross-Moving Brief. (Pls.' Cross-Mot. for Summary J.; Pls.' Cross- Moving Br.) The parties filed their respective opposition briefs (*see* Pls.' Opp'n Br., Def.'s Opp'n Br.), as well as their respective reply briefs in further support of their motions (*see* Def.'s Reply Br., Pls.' Reply Br.).

## II. SUBJECT MATTER JURISDICTION

The Court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States. (*See generally* FAC.) The Court exercises supplemental jurisdiction over Plaintiffs' NJLAD claims under 28 U.S.C. § 1367. (*Id.*)

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee also Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49. The summary judgment standard, however, does not operate in a vacuum. The Court "must view the evidence presented through the prism of the substantive evidentiary burden," *id.* at 254, and construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny P.A.*, 139 F.3d 386, 393 (3d Cir. 1998).

## IV. **DISCUSSION**

Both parties move for summary judgment on all of Plaintiffs' claims. Defendant submits that it is entitled judgment as a matter of law because Plaintiffs have not met their evidentiary burden in proving their RA, ADA, and NJLAD claims for failure to accommodate and disparate treatment. (*See generally* Def.'s Moving Br.) Plaintiffs, on the other hand, contend that they are entitled to judgment as a matter of law because there is sufficient evidence in the record to prove their RA, ADA, and NJLAD failure to accommodate and disparate treatment claims. (*See generally* Pls.' Cross-Moving Br.) Before turning to the merits of the parties' arguments, the Court begins with a brief overview of the RA, ADA, and NJLAD.

### A. DISCRIMINATION ON THE BASIS OF A DISABILITY UNDER THE RA, ADA, AND NJLAD

The RA, ADA, and NJLAD prohibit discrimination on the basis of a disability. *Ali v. City of Newark*, Civ. No. 15-8374, 2019 WL 1326888, at *3 (D.N.J. Mar. 25, 2019); *see also* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits . . . of a public entity, or be subjected to discrimination by any such entity"); 29 U.S.C. § 794(a) ("No qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under and program or activity" of a federally funded entity); N.J. Stat. Ann. § 10:5-4 ("All persons shall have the opportunity to obtain . . . all the accommodations, advantages . . . and privileges of any place of public accommodation . . . without discrimination because of . . . disability").

Claims of discrimination on the basis of one's disability can proceed under three theories under the RA, ADA, and NJLAD: (1) failure to accommodate; (2) disparate treatment; or (3) disparate impact.[2] *Affinity Healthcare Grp. Voorhees, LLC v. Township of Voorhees*, 624 F. Supp. 3d 494, 510 (D.N.J. 2022), *aff'd*, Civ. No. 22-2769, 2024 WL 195471 (3d Cir. 2024). To evaluate claims of disability discrimination under either of those three theories, "courts . . . typically adopt[ ] the analytical framework of their analogues in employment law," first requiring the plaintiff to demonstrate a *prima facie* case of discrimination. *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020).

To prove a *prima facie* case of discrimination under the RA, ADA, and NJLAD, a plaintiff must establish that he or she: (1) has a disability; (2) was otherwise qualified to participate in the activity or program at issue; and (3) was denied the benefits of the program or otherwise

[2] Plaintiffs do not bring claims under a disparate impact theory. (*See generally* FAC.)

discriminated against because of his or her disability. *See J.T. v. Dumont Pub. Schs.*, 103 A.3d 269, 263–64 (N.J. Super. Ct. App. Div. 2014) (citations omitted). As to prong three, however, the RA and ADA's respective causation elements differ. Under the RA, a plaintiff may "recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability[.]" *CG v. Pennsylvania Dep't of Educ.,* 734 F.3d 229, 235–36 (3d Cir. 2013). The ADA, alternatively, "covers discrimination on the basis of disability, even if there is another cause as well." *Id.* at 236. The evidentiary burden at the *prima facie* stage is modest; "it is to demonstrate to the [C]ourt that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination *could* be a reason for the [adverse] action." *Foster v. Kennedy Univ. Hosp., Inc.*, Civ. No. 20-4415, 2022 WL 2981156, at *8 (D.N.J. July 28, 2022) (quoting *Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 508 (3d Cir. 1996)).

Given that there is no dispute that C.B. has a disability, the Court addresses the remaining elements of the *prima facie* inquiry in turn for her failure to accommodate and disparate treatment claims. For the reasons that follow, no reasonable juror can conclude that C.B. met her burden in demonstrating a *prima facie* case of discrimination.

1. C.B. is not qualified to participate in Defendant's transportation program

Under the ADA, a qualified individual means "an individual with a disability who, with or without reasonable modification . . . meets the essential eligibility requirements for the receipt of services or the participating in programs or activities provided by a public entity." 42 U.S.C. § 1231(2). Pursuant to the regulations of the RA, a qualified individual is defined to mean, among other things, either:

> (2) With respect to public preschool elementary, secondary, or adult educational services, a handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required

> to provide a free appropriate public education under section 612 of the Education of the Handicapped Act; [or]
>
> . . .
>
> (4) With respect to other services, a handicapped person who meets the essential eligibility requirements for the receipt of such services.

34 C.F.R. § 104.3(l). Although the NJLAD does not provide insight as to who may be a "qualified individual," the NJLAD's applicability is "subject only to [the] conditions and limitation applicable alike to all persons." N.J. Stat. Ann. § 10:5-4.

Here, Defendant argues that although C.B. has a disability, she is not qualified to attend Defendant's school and, consequently, cannot receive transportation from Defendant to and from the school under its policy. (Def.'s Moving Br. at 7.) C.B. argues that by virtue of her residence in Middletown, as well as her statutory duty to send her children to public school, she is entitled to participate in and receive the benefits of Middletown's public schools, including its transportation program. (Pls.' Cross-Moving Br. at 7–9.)

The New Jersey Constitution mandates the state legislature to "provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the [s]tate between the ages of five and eighteen years." N.J. Const. art. VIII, § IV, ¶ 1. The state legislature is therefore primarily responsible to provide children with an adequate free public education system "that will prepare public school children for a meaningful role in society, . . .will enable them to compete effectively in the economy[,] and to contribute to and participate as citizens and members of their communities." *Abbott by Abbott v. Burke*, 693 A.2d 417, 427–28 (N.J. 1997) (citations omitted). In accordance with that constitutional command, the state legislature enacted N.J. Stat. Ann. § 18A:38-1 providing for the free public education of "persons over five and under twenty years of age" domiciled within the subject school district. N.J. Stat. Ann. § 18A:38-1. For pupils residing in the subject school district, the state legislature

requires transportation to and from school for "elementary school pupils who live more than two miles from their public school . . . ." N.J. Stat. Ann. § 18A:39-1. The purpose behind N.J. Stat. Ann. § 18A:39-1 is to ensure the safety and welfare of children going to school. *See Bd. of Educ. of Township of Wayne v. Kraft*, 643 A.2d 1029, 1037 (N.J. Super. Ct. App. Div. 1994), *rev'd on other grounds*, 656 A.2d 430 (N.J. 1995).

Based on the foregoing, the essential criteria to be eligible for Defendant's transportation program are: (1) a school-aged pupil between the ages of five and twenty; (2) residence within the school district; and (3) residence that is more than two miles from the subject public school. Here, there is no genuine dispute of material fact that C.B. is not a school-aged pupil and, although she resides within the public school district at issue, she lives one and a half miles from the Harmony and New Monmouth Elementary Schools. (Def.'s SOMF ¶¶ 17, 31, 40, 67; Pls.' RSOMF ¶¶ 17, 31, 40, 67; Pls.' Cross-SOMF ¶¶ 48, 79; Def.'s Cross-RSOMF ¶¶ 48, 79.) Therefore, with or without an accommodation, C.B. is not qualified to participate in Defendant's transportation program because she does not meet its eligibility requirements. 42 U.S.C. § 1231(2); 34 C.F.R. § 104.3(l); N.J. Stat. Ann. § 10:5-4.

C.B.'s reliance on *Rothschild v. Grottenthaler*, 907 F.2d 286 (2d Cir. 1990) is inapposite to the circumstances presented in this case. In *Rothschild*, the school district routinely invited the plaintiff's parents "to parent-teacher conferences, meetings with School District personnel[,] and other events designed for parental involvement." 907 F.2d at 289. The plaintiff's parents were interested in attending such events; however, absent a sign-language interpreter, they would not be able to effectively communicate with the plaintiff's teachers and that the school district's failure to provide a sign-language interpreter denied them a reasonable accommodation to participate in opportunities incident to the plaintiff's education. *Id.* Construing the language in 34 C.F.R.

§ 104.3(k)(4)[3], the Second Circuit determined that the "other services" offered by the school were the parent-teacher conferences or other parent-oriented events related to the plaintiff's education and, as such, the plaintiff's parent met the definition of a qualified handicapped person qualified to receive such services. *Id.* at 291–92. The distinction here, as previously discussed, is that the school's transportation service is a service provided to the school district's pupils for their safety and wellbeing. It is not a service offered to the students' parents or family members. Therefore, C.B. does not meet the definition of an otherwise qualified person who meets the essential eligibility requirements to receive transportation services to and from her children's school.[4]

2. <u>Assuming C.B. met the eligibility requirements for Defendant's transportation program, the undisputed record demonstrates that she was not denied access to Defendant's transportation program because of her disability</u>

Assuming C.B. were a qualified individual, in order to satisfy element three of the *prima facie* inquiry, she "must prove that [she was] treated differently based on . . . the existence of [her] disability." *CG*, 734 F.3d at 236. As previously discussed, "under the RA, the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 291 n. 25 (3d Cir. 2019); *see also Muhammad v. Ct. of Common Pleas of Allegheny Cnty., Pa.*, 403 F. App'x 759, 764 (3d Cir. 2009) ("[T]he ADA's 'by reason of' language requires a showing of causation: the plaintiff must

[3] The present-day regulation is 34 C.F.R. § 104.3(l)(4) as discussed *supra*.

[4] The Court acknowledges the departure from Judge Sheridan's ruling on Defendant's Motion to Dismiss. (*See* ECF No. 16 at 14–22.) The difference is one of posture. In the Motion to Dismiss context, all that was required of C.B. was to plausibly allege facts demonstrating her entitlement to the school's transportation services. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (noting that to survive a motion to dismiss, the alleged facts must be sufficient to show a plausible claim for relief.) At the summary judgment stage, however, C.B. had to prove such eligibility, and the facts presented here did not extend beyond the allegations pled in her FAC. *See Russell v. City of Phila.*, Civ. No. 13-3151, 2016 WL 4478764, at *5 n.13 (E.D. Pa. Aug. 25, 2016) (noting that "[i]t is well-settled that a plaintiff cannot meet her summary judgment burden by relying upon the allegations contained in the complaint." (citing *Celotex*, 477 U.S. at 324)).

demonstrate that, but for the failure to accommodate, [s]he would not be deprived of the benefit [s]he seeks.").

Defendant contends that there is neither evidence of disability discrimination nor discriminatory animus in the record because, for each year Plaintiffs requested an accommodation, Defendant applied its transportation policies in a neutral fashion by evaluating whether there was space available on an existing bus route. (Def.'s Moving Br. at 17–18, 25–26.) Plaintiffs contend that the record proves Defendant's discriminatory intent because: (1) Defendant refused to consider C.B.'s disability when it refused to provide her with the reasonable accommodation she requested; and (2) Defendant regularly makes exceptions to its transportation policies for families not experiencing disability. (Pls.' Cross-Moving Br. at 13, 19–24.)

On her failure to accommodate and disparate treatment claims, no reasonable juror could conclude that C.B. has been deprived of a benefit provided to non-disabled parents because of her disability. *CG*, 734 F.3d at 236. Here, the undisputed record demonstrates that: (1) Defendant denied C.B.'s request for transportation because there was no existing route available for the 2022 to 2025 school years; (2) the Board of Education treated C.B.'s request the same as it would have for any parent requesting transportation; and (3) the Board of Education granted C.B.'s request when space on an existing bus route was available. (Def.'s SOMF ¶¶ 75–77, 81, 88 95–96, 99; Pls.' RSOMF ¶¶ 75–77, 81, 88 95–96, 99; Pls.' Cross-SOMF ¶¶ 64–66, 68, 81, 88, 96, 135, 150–152; Def.'s Cross-RSOMF ¶¶ 64–66, 68, 18, 88, 96, 135, 150–152.) These undisputed facts, taken together, fail to establish that Defendant's discriminatory purpose was either the sole reason or the

"but for" cause of Defendant denying C.B.'s children access to its transportation program.[5] Therefore, the third prong of the *prima facie* case has not been satisfied for C.B.'s failure to accommodate and disparate treatment claims.

Accordingly, C.B. cannot establish a *prima facie* case of discrimination under either her failure to accommodate theory or her disparate treatment claims. Summary judgment in Defendant's favor is warranted as to C.B.'s claims for failure to accommodate and disparate treatment.

### B. ASSOCIATIONAL DISCRIMINATION ON THE BASIS OF A DISABILITY

The Third Circuit has "recognized that nondisabled persons may sue under the RA and ADA when they[ have] suffered discrimination because of their association with a disabled person." *R.S. by R.D.S. v. Butler Cnty., Pa.*, 700 F. App'x 105, 109 (3d Cir. 2017); *see also Bowie v. Costco Wholesale Corp.*, Civ. No. 16-5808, 2017 WL 3168985, at *3–4 (D.N.J. July 26, 2017) (discussing that although the NJLAD does not statutorily recognize associational discrimination, the New Jersey Superior Court Appellate Division has approved of it). To prevail on an associational claim, a plaintiff must prove: "(1) [that the plaintiff has] a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against [the plaintiff] because of that association; and (4) [the plaintiff] suffered a direct injury as a result of the discrimination. *S.K. v. N. Allegheny*

[5] Although Plaintiffs point to examples where Defendant provided transportation to income-eligible families, families who live upon hazardous routes, or families who were affected by the Port Monmouth Elementary School closure, these comparators do not demonstrate a causal nexus between C.B.'s disability and preferential treatment for non-disabled families. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268–69 (3d Cir. 2010) (stating that "comparative evidence is often highly probative of discrimination, [but] it is not an essential element of a plaintiff's case"). Nor are these families similarly situated to Plaintiffs because the record does not support that they were provided transportation within the two-mile boundary absent special circumstances. *See Jenkins v. Southwestern Pa. Human Servs.*, Civ. No. 20-501, 2021 WL 5989112, at *12 (W.D. Pa. Dec. 17, 2021) (stating that "[a]lthough similarly situated does not mean identically situated, a plaintiff must [still] demonstrate that she is similar to the alleged comparator in all relevant respects." (second alteration in original) (internal quotation marks and citations omitted)).

*Sch. Dist.*, 146 F. Supp. 3d 700, 712 (W.D. Pa. 2015). The associated plaintiff must prove that he or she suffered a direct injury that is "a separate and distinct denial of a benefit or service to a non-disabled person." *D.M. by and through Mr. J.M. v. E. Allegheny Sch. Dist.*, Civ. No. 22-0110, 2023 WL 2139887, at *5 (W.D. Pa. Feb. 21, 2023) (citation omitted).

Despite V.B., S.B., and R.B. (child)'s contention that they are deprived of the benefits of public schooling due to these accumulated absences and suffer emotional harm, (Pls.' Cross-Moving Br. at 25), the children's alleged injuries stem from Defendant denying C.B.'s request to provide the children transportation. In other words, V.B., S.B., and R.B. (child) have not established a direct injury emanating from a distinct discriminatory act taken against them personally. *D.M.*, 2023 WL 2139887, at *5; *see also United States v. Nobel Learning Cmtys., Inc.*, Civ. No. 09-1818, 2010 WL 1047730, at *4 (E.D. Pa. Mar. 19, 2010), *as amended* (Mar. 24, 2010) (associational discrimination "requires a separate and distinct denial of a benefit or service to a non-disabled person; it may not be premised on a derivative benefit or harm based on treatment towards a disabled person"); *see D.C. v. Pittsburgh Pub. Schs.*, 415 F. Supp. 3d 636 666–67 (W.D. Pa. 2019) (dismissing associational disability discrimination claims where injuries occurred as a result of the actions taken toward disabled child and not the family members directly).

Accordingly, no reasonable juror could conclude that Defendant discriminated against V.B., S.B., and R.B. (child) due to their association with C.B. Summary judgment in favor of Defendant is warranted on the failure to accommodate and disparate treatment claims brought by

V.B., S.B., and R.B. (child) on account of their association with C.B. The Court does not reach the remaining arguments.[6]

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion for Summary Judgment and **DENY** Plaintiffs' Cross-Motion for Summary Judgment. An appropriate Order will follow.

Date: September 14, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[6] As a final matter, Defendant has moved for summary judgment against R.B. (father) on all counts on the basis that he is neither disabled nor denied access to a service or program to which he has a right. (*See* Def.'s Moving Br. at 9–10.) Plaintiffs have not substantively addressed this argument in their opposition brief, nor have they made an argument that R.B. (father) prevails on his claims in their Cross-Motion. "Where a plaintiff fails to address a claim in their opposition to a summary judgment motion, it is proper for the Court to grant summary judgment on that issue." *Kluender v. United States Liab. Ins. Co.*, Civ. No. 22-3650, 2025 WL 886949, at *4 (E.D. Pa. Mar. 21, 2025), *aff'd*, Civ. No. 25-1750, 2026 WL 674215 (3d Cir. Mar. 10, 2026). Consequently, the Court grants summary judgment as to the failure to accommodate and disparate treatment claims brought by R.B. (father) on part of his association with C.B. because there is no genuine dispute of material fact that he is not disabled and has not asserted an injury that is separate and distinct from Defendant's refusal to provide transportation to the children as an accommodation to C.B.'s disability.